IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 36678

| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, August 2010 Term |
| | ) | |
| v. | ) | 2010 Opinion No. 129 |
| | ) | |
| WILLIAM LYNN BENNETT, | ) | Filed: December 7, 2010 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for grand theft and persistent violator enhancement, vacated.

Molly Huskey, State Appellate Public Defender, Boise, for appellant. Sara B. Thomas, Chief Deputy Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Jessica M. Lorello, Deputy Attorney General argued.

_____

BURDICK, Justice

Appellant William Lynn Bennett was convicted of grand theft and sentenced to eight years, with one-and-a-half years fixed. The court imposed a concurrent sentence of the same duration for a persistent violator enhancement. This case concerns the element of ownership in a charge of theft pursuant to I.C. § 18-2403(1) where a sale of goods is involved. We conclude that a seller of goods who has delivered the goods to the buyer, but has not yet been paid in full and does not have a security interest, is not an owner of the goods for the purposes of I.C. § 18-2403(1). We vacate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose out of Bennett's purchase of a travel trailer from John LeFave. When Bennett moved out of state and took the trailer with him without making all the payments, LeFave reported the trailer missing and a criminal case ensued. At trial, the State established

1

that Bennett entered into a verbal agreement with LeFave in October 2004 to purchase LeFave's travel trailer.[1]  It was agreed that LeFave would take the trailer to the property of Carolynn Ellinger (an acquaintance of Bennett), where Bennett was staying, and that Bennett would make payments to LeFave until the full purchase price had been paid.

LeFave testified that the parties had not agreed to a payment structure but that he had told Bennett that he would take a down payment and they "would go from there and go to a finance company and get it straightened out."  LeFave testified that under the terms of the agreement, once Bennett finished paying for the trailer, Bennett would receive the title.  LeFave testified that when he delivered the trailer at Ellinger's property he put a chain on it and a tongue and hitch lock system to keep it from being moved because Bennett did not have permission to move the trailer until it had been paid for in full.  LeFave testified that he told Bennett that if the trailer needed to be moved, LeFave would personally move it "so [he] would know where it was at all times."  However, Bennett testified that he was free to move the trailer and that it was not locked.  Ellinger testified that the trailer was chained to the fence but was not locked.[2]

Bennett made at least one payment toward the purchase price,[3] but then LeFave learned that the trailer had been moved.  Bennett stated that he informed LeFave that he would be moving and provided LeFave with his new address. LeFave testified that Bennett moved the trailer without permission or notice.  After learning that the trailer had been moved, LeFave went to Ellinger's property to confirm that it was missing and discovered that the lock had been removed and that part of the lock system had been left on the ground.  However, Ellinger testified that she did not see a lock left behind when Bennett moved the trailer.

LeFave testified that Bennett called him a few months later to tell him he had moved the trailer to Washington.  During that call, Bennett told LeFave to send him the title to the trailer and then Bennett would send LeFave $1000 but that if LeFave involved the police Bennett would burn the trailer.  After contacting law enforcement, LeFave sent a certified letter to the address Bennett had given him on the phone, advising Bennett that LeFave was going to report

---

[1] The parties offered conflicting testimony regarding the agreed-upon purchase price for the travel trailer.  LeFave testified that he advertised the trailer for $1800, and Bennett agreed to pay him $1500.  Bennett testified that he only agreed to pay $850.

[2] It is unclear whether Ellinger was referencing the chain and trailer being locked to the fence or the travel trailer itself being locked.

[3] The parties agreed that one payment was made to LeFave's wife, who could not recall the precise amount.  She estimated that it had been between $200 and $300.

the trailer as stolen and that if Bennett had any questions, he should contact the Boise Police Department. The letter was eventually returned as undelivered.[4]

In an effort to locate the trailer, LeFave drove to Washington to the address Bennett had given him. He discovered that both Bennett and the trailer were no longer at that location, and reported the theft of the trailer to law enforcement. At the time of trial, LeFave had received neither further payment nor a return of the trailer from Bennett.

Bennett was charged with grand theft under I.C. §§ 18-2403(1) and 18-2407(1)(b) and with being a persistent violator under I.C. § 19-2514. A jury found Bennett guilty of grand theft, and Bennett subsequently pled guilty to the persistent violator allegation. He filed a motion for judgment of acquittal, claiming that "[t]he inculpatory evidence presented on the material element of value was so insubstantial that jurors could not help but have a reasonable doubt as to the proof of that element." The district court denied the motion, entered a judgment of conviction and imposed a unified eight-year sentence with one-and-a-half years determinate for the grand theft conviction. The court also imposed an identical sentence for the persistent violator enhancement to run concurrently. Although there was substantial conflicting testimony, the jury found that the trailer involved was valued at over $1000. The defense counsel at trial made a post-judgment motion to dismiss the case based upon the inadequacy of the valuation of the trailer. The district court denied the motion, and for purposes of this opinion this Court will not address that issue.

## II. ANALYSIS

This decision hinges on the definition of "owner" in I.C. § 18-2402(6). Bennett was charged with a violation of I.C. § 18-2403(1). For Bennett to be guilty, LeFave must have been the "owner" of the trailer. Idaho Code § 18-2403(1) states: "A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an *owner* thereof." (Emphasis added). Idaho Code § 18-2402(6) defines "owner" as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." Thus, in this case, the State had the burden of proving that LeFave had possessory rights in the trailer

---

[4] The letter was addressed to "Mr. Bittin," but no further evidence was presented as to why it was returned.

which were superior to any possessory rights that Bennett had at the time of the alleged wrongful taking.

The Uniform Commercial Code (UCC) applies to transactions involving the sale of goods. I.C. § 28-2-102. Even though I.C. § 18-2402(6) defines "owner" for the purposes of the charged crime, that definition depends on the possessory rights of the persons involved, and the criminal code does not provide guidance on possessory rights. It is necessary to examine Article 2 of the UCC to determine the relative possessory rights of LeFave and Bennett.

LeFave parted with possession of the trailer by delivering it to Bennett. Upon Bennett's breach of contract, LeFave did not regain superior possessory rights. First, under the UCC, an unpaid seller of goods does not have a remedy to retake the property. LeFave's available remedy is to sue Bennett for the unpaid price pursuant to I.C. § 28-2-709(1)(a). Second, while LeFave may think that he was to retain title to the trailer until it was paid for in full, pursuant to I.C. § 28-2-401(1), "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Although such a security interest would give the seller a superior possessory right in the property upon the buyer's default, there is no legally enforceable security interest in this case.

A security interest arising under I.C. § 28-2-401 is subject to chapter 9, title 28, Idaho Code. I.C. § 28-9-110. Requirements for such a security interest to be enforceable are set forth in I.C. § 28-9-203(b). While I.C. § 28-9-110 exempts security interests arising under I.C. § 28-2-401 from meeting the requirements set forth in I.C. § 28-9-203(b), this exemption applies only "until the debtor obtains possession of the goods." In this case, Bennett obtained possession of the goods when LeFave delivered the trailer. Therefore, any security interest arising under I.C. § 28-2-401 that LeFave is asserting must meet the requirements set forth in I.C. § 28-9-203(b) in order to be enforceable. LeFave did not create an enforceable security agreement, as the agreement fails to satisfy any of the conditions in I.C. § 28-9-203(b)(3).

For purposes of I.C. § 18-2402(6), at the time Bennett broke the terms of the agreement by moving the trailer, LeFave was not the "owner" of the trailer, because he did not have a superior possessory right. LeFave parted with possession and had no security interest entitling him to repossession of the trailer upon Bennett's default. LeFave's only right as an unpaid seller without a legal security interest in the trailer was to sue Bennett for the amount still due on the sale pursuant to I.C. § 28-2-709(1)(a).

4

In this case, the contract called for Bennett to make payments over an unknown period of time in unknown quantities, and LeFave delivered the trailer without qualification and without retaining a legally cognizant security interest.  The jury was not given instructions as to how to determine who had the superior possessory right in this transaction.  Without that roadmap, the jury wrongly found that LeFave had the superior possessory right.  As explained above, the superior possessory right resided with Bennett at the time that LeFave delivered the trailer to him without retaining any legally supported secured interest.  Because Bennett had the superior possessory right, LeFave was not the "owner" of the trailer, and, therefore, the Court finds the evidence presented by the State is insufficient to sustain Bennett's conviction for violating I.C. § 18-2403(1).

## III.  CONCLUSION

The State has failed to prove beyond a reasonable doubt that LaFave was the "owner" of the trailer pursuant to I.C. §§ 18-2403(1) and 18-2402(6).  Conviction is vacated.  As a result of vacating the conviction, the persistent violator conviction is also vacated.

Chief Justice EISMANN and Justices W. JONES and HORTON, **CONCUR.**

J. JONES, J., specially concurring.

I concur with the Court's opinion vacating Bennett's conviction. As the opinion demonstrates, this is a case that should have been resolved in the civil arena, rather than in a criminal prosecution. Although I do not disagree with the Court's employment of the Uniform Commercial Code to resolve the question of possessory rights, it does appear that there is another avenue that would produce the same result.

The Legislature has enacted specific provisions relating to the registration, titling, transfer, and securitizing of motor vehicles. Trailers or towed recreational vehicles intended to be operated on the State's highways are required to be registered. I.C. §§ 49-401A(1) and 422(1). The travel trailer in question here was therefore required to be registered. Under Idaho Code section 49-501, vehicles that are required to be registered pursuant to Chapter 4, Title 49, Idaho Code (with certain exemptions not pertinent here), must be titled. Thus, the trailer at issue here was required to be titled. Idaho Code section 49-502 provides that titled vehicles shall not be sold or otherwise disposed of without delivery to the purchaser of a certificate of title. Idaho Code section 49-518(6) makes it a felony offense for a person to purport to sell or transfer a vehicle without delivering a certificate of title to the purchaser. The Legislature has provided for

5

the perfection of a security interest in registered vehicles when they are sold. The security interest is perfected by compliance with Idaho Code sections 49-504 and 510. A security interest in a vehicle may not be perfected without complying with those sections. The seller's lien is emblazoned on the certificate of title to, among other things, protect the secured interest of the seller.

Here, LeFave failed to comply with the above requirements, in that he did not furnish Bennett a certificate of title as required by statute, and he did not perfect a security interest in the trailer, as he could well have done had he transferred title. He turned over possession of the trailer to Bennett without any written documentation as to the details of the agreement between the parties. There was subsequent dispute as to the purchase price of the trailer, the terms of payment, the number and amount of payments that were made, what (if any) conditions constituted a default, and what remedies LeFave had in the event of default.

This case shares a commonality with *Johnson v. Bennion*, 70 Idaho 33, 211 P.2d 148 (1949). There, Johnson entered into an option contract under which Bennion obtained possession of two oil trucks and trailers for a down payment of $6,000, the right to the continued use of the vehicles upon making specified periodic payments, and the right to obtain certificates of title upon payment of the total purchase price of $32,400. At the same time, the parties entered into an operations contract setting out terms and conditions for Bennion's use of the equipment. Johnson subsequently repossessed the equipment without process, contending Bennion had failed to make timely payments, damaged the equipment, and forfeited the purchase option. Bennion brought suit for damages, asserting wrongful conversion of the vehicles by Johnson. Bennion recovered a monetary judgment for the conversion in district court and Johnson appealed.

On appeal, Johnson argued, similarly to the State's argument in this case, that Bennion had no possessory rights to the vehicles because Bennion had received no certificate of title to the vehicles. *Id.* at 36, 211 P.2d at 150. Johnson's argument was based upon former Idaho Code section 49-404, which provided that "no person acquiring a motor vehicle from the owner can acquire any right, title, claim or interest thereto until he shall have issued to him a certificate of title thereto." Idaho Code section 49-503, which the State relied upon below, is the successor provision and essentially contains the same language. The conviction here was based on the

6

premise that Bennett had no justifiable claim to ownership or any possessory interest superior to LeFave's by virtue of said statute.

However, the Bennion court did not consider the predecessor statute to be controlling. According to the Court,

> Obviously that Section does not apply to the transaction herein and was initially so recognized by [Johnson], because he delivered possession of the vehicles to respondents in order that they might carry out the terms of the operations contract . . . By the operations contract [Bennion], as long as they were not in default, whether because they had paid or [Johnson] had waived strict performance—thus not being entitled to declare a forfeiture without giving notice and allowing respondents an opportunity to purge themselves of fault—had sufficient right to possession under the authorities cited by [Bennion] to bring the [conversion] action.

*Id.* at 36-37, 211 P.2d at 150. Thus, by virtue of having been delivered possession of the vehicles and because no determination had been made that Bennion was in default under the agreement providing for Bennion's use of the vehicles, Bennion had the superior right to possession of the vehicles.

The same result is dictated here. In this case, it is clear that LeFave delivered possession of the trailer to Bennett pursuant to an oral agreement of sale. The parties dispute the terms of the agreement, including the purchase price, payment terms, existence of a default, and the like. Despite the fact that Bennett did not receive a certificate of title, he had a right retain possession of the trailer unless and until it was established that he was in default under the agreement. That obviously could not be determined until the terms of the agreement were established. Subjecting Bennett to criminal proceedings, even though he may have been previously involved with the criminal justice system, as evidenced by the persistent violator charge, was clearly inappropriate.