# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47112

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | **Boise, February 2020 Term** |
| v. | ) | |
| | ) | **Opinion Filed: June 10, 2020** |
| WILLIAM TIMOTHY DIX, | ) | |
| aka JAMAAL AL-DIN, | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Richard D. Greenwood, District Judge.

Dix's convictions are <u>reversed</u> and the case is <u>remanded</u> with instructions to enter a judgment of acquittal on both counts.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Jenevieve Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John McKinney argued.

Rick Eichstaedt, amicus curiae brief for the Commercial Law Amicus Initiative.

_____

BRODY, Justice.

This case concerns the application of the Uniform Commercial Code (UCC) to the ownership elements of grand theft and burglary. Over a period of several months, William Dix bought several thousand dollars' worth of goods—mainly power tools—from Grainger Supply on credit. On the same days he bought the goods, he pawned them. Dix was charged with grand theft and burglary, and pleaded not guilty to both counts. At trial, the State argued that Dix committed theft by obtaining the goods on credit without intending to pay for them, and committed burglary by receiving loans from the pawn shop in exchange for the goods based on false representations that he owned them.

1

Following the close of the State's case-in-chief, Dix moved for a judgment of acquittal under Idaho Criminal Rule 29 on both charges. Dix argued that under *State v. Bennett*, 150 Idaho 278, 246 P.3d 387 (2010), he became the owner of the goods once he obtained possession of them from Grainger, and as the owner, he could lawfully pawn them. The district court denied Dix's motion, and the jury subsequently returned guilty verdicts on both counts. After trial, Dix renewed his Rule 29 motion on the burglary charge, and this motion was also denied. The district court entered an order withholding judgment and placing Dix on probation for eight years. Dix timely appealed, and the Court of Appeals affirmed. This Court granted Dix's petition for review. For the reasons stated below, we reverse Dix's convictions and remand the case to the district court with instructions to enter a judgment of acquittal on both counts.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Dix was charged with (1) grand theft under Idaho Code sections 18-2403(1), -2407(1)(b), and -2409; and (2) burglary under Idaho Code section 18-1401. The State alleged that Dix committed theft when, between November 2, 2015 and December 1, 2016, he used a line of credit to acquire goods from Grainger, an industrial supply company, without intending to pay for them. The State further alleged that Dix committed burglary when, between November 2, 2015, and November 4, 2016, he entered Vista Pawn with the intention to commit theft by pawning goods stolen from Grainger. (The date range for the burglary charge was subsequently amended.) Dix pleaded not guilty to both counts.

A two-day jury trial was held on June 14 and 15, 2017. At trial, a Grainger employee testified that Dix obtained the goods from Grainger using an open line of credit he had established on behalf of two businesses: Jamaal Al-Din Hoops, Inc., and BoiseLibrarian.com. (The State's attorney noted that the State did not believe these were legitimate businesses, but stated that was irrelevant to the prosecution's case.) The Grainger employee added that in the fall of the previous year, a police officer asked him to provide invoices showing all the goods that Dix obtained from Grainger. These invoices were admitted, as well as several photographs of shipping labels identified as Grainger's. Dix ordered and picked up goods—mainly power tools—on nine occasions from November 2015 to November 2016. The total value of the goods exceeded $1,000. The Grainger employee was not aware of any payments Dix had made toward these goods.

2

A Vista Pawn employee testified that in the fall or winter of 2016, Dix brought in tools that were all new and still in the box. Vista Pawn gave him loans for those tools. For each pawn transaction, Vista Pawn requires that the customer sign and fingerprint a pawn slip indicating that the item the customer is selling or getting a loan for is the customer's property. Because so many of the tools were brand new in the box, and some of the boxes had never been opened before, he "kind of got a weird taste in [his] mouth about it." He reported his concerns to the Boise Police Department and turned over the goods that Dix had brought in. The Vista Pawn employee identified four pawn slips as Vista Pawn's business records of Dix's transactions, and these pawn slips were admitted. Together with the Grainger invoices and testimony by the Grainger and Vista Pawn employees, these pawn slips showed that Dix pawned these goods on the same day that he picked them up from Grainger.

The investigating police officer testified that he previously had contact with Dix in the spring of 2016, when an investigation revealed that Dix had bought thirteen cell phones and tablets from a cell phone store under a business license and then pawned them. No criminal charges resulted from that investigation, but he told Dix that his actions could lead to criminal charges if they continued. In October of 2016, the officer was contacted by Vista Pawn, who was concerned that the goods brought in by Dix might have been stolen. The officer was able to determine that these goods had been purchased by Dix at Grainger, and that Dix had also pawned some of the goods at First National Pawn. However, First National Pawn had already sold the tools by the time of the investigation. Pawn slips from First National Pawn were admitted. The evidence regarding Dix's transactions with the cell phone store and First National Pawn, however, were admitted only for limited purposes under Idaho Rule of Evidence 404(b).

At the close of the State's case-in-chief, Dix moved for a judgment of acquittal on both charges under Idaho Criminal Rule 29. The district court denied this motion.

The district court also rejected two of Dix's proposed jury instructions. The first proposed jury instruction cited Idaho Code section 28-2-403 and described the power of a fraudulent purchaser to transfer good title. The second proposed jury instruction cited Idaho Code sections 28-2-102, 28-2-106, 28-2-401, and 28-9-201, as well as *Bennett*, and described the relative possessory rights of the buyer and seller in a sales contract.

The jury returned a verdict of guilty on both counts. Dix then renewed his Rule 29 motion as to the burglary charge alone. This motion was also denied.

3

Following a sentencing hearing, the district court issued an order withholding judgment and placing Dix on probation for eight years. Following a motion by the State and stipulation by the parties, the district court entered an order and judgment requiring Dix to pay $4,994.82 in restitution: $3,494.82 to Grainger and $1,500.00 to Vista Pawn.

Dix filed a timely notice of appeal from the order withholding judgment and order of probation, and subsequently filed an amended notice of appeal. The Court of Appeals affirmed. *State v. Dix*, No. 45364, 2019 WL 946821, at *4 (Idaho Ct. App. Feb. 27, 2019). This Court granted Dix's petition for review.

## II. STANDARD OF REVIEW

When reviewing a case on petition for review, this Court gives due consideration to the decision reached by the Court of Appeals but directly reviews the decision of the trial court. *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019).

After the close of the prosecution's evidence or after both sides have rested, the trial court must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction. I.C.R. 29(a). When reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt was proven beyond a reasonable doubt. *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016). The relevant inquiry is not whether the appellate court would find the defendant to be guilty beyond a reasonable doubt, but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

This Court freely reviews questions of statutory interpretation. *State v. Keeton*, 165 Idaho 663, 665, 450 P.3d 311, 313 (2019).

## III. ANALYSIS

Dix's conduct and the legal challenges surrounding it are nothing new. Courts have been wrestling with these kinds of issues since at least the 1700s. *See* Annotation, *Appropriation of Property After Obtaining Possession by Fraud as Larceny,* 26 A.L.R. 381, at § 1 (originally published in 1923) (collecting cases dating back to the 1700s); Annotation, *Purchase of Property on Credit Without Intending to Pay for It as Larceny*, 35 A.L.R. 1336 (originally published in 1925). For the reasons set out below, we reverse Dix's convictions.

4

**A. The district court erred in denying Dix's motion for judgment of acquittal for grand theft.**

Dix is correct. His grand theft conviction cannot be sustained because the State did not prove that Grainger had a superior possessory interest to the goods at the time of Dix's alleged theft.

According to the State, Dix committed theft at the moment he gained possession of the goods. In Idaho, in order to be guilty of the crime of theft, the defendant must take property from its "owner": "A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an *owner* thereof." I.C. § 18-2403(1) (emphasis added). Thus, Dix's conviction can only be sustained if Grainger was the owner of the goods when Dix acquired them. *See Bennett*, 150 Idaho at 279, 246 P.3d at 388 ("For Bennett to be guilty, LeFave must have been the 'owner' of the trailer.")

"Owner," for the purposes of the theft statute, is defined as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." I.C. § 18-2402(6). Therefore, in order for Grainger to have been the owner of the goods at the time of Dix's alleged theft, it must have had possessory rights in the goods which were superior to Dix's. *See Bennett*, 150 Idaho at 280, 246 P.3d at 389 ("[T]he State had the burden of proving that LeFave had possessory rights in the trailer which were superior to any possessory rights that Bennett had at the time of the alleged wrongful taking.")

In *Bennett*, we held that because the theft statute's definition of "owner" depends on the possessory rights of the persons involved, and because the criminal code does not provide guidance on possessory rights, we must use Article 2 of the UCC to determine who had the superior possessory right when an alleged theft involved a sale of goods. *Id.* That case involved a charge of theft related to the sale of a travel trailer. *Id.* at 278, 246 P.3d at 387. Bennett bought a trailer from LeFave, who agreed to let Bennett take the trailer for a down payment and pay the remainder of the purchase price later. *Id.* LeFave and Bennett further agreed that LeFave would transfer title to Bennett once Bennett finished paying for the trailer. *Id.* Bennett made at least one payment toward the purchase price but then moved the trailer out of state. *Id.* at 279, 246 P.3d at 388. Bennett was charged with and found guilty of grand theft under Idaho Code section 18-2403. *Id.*

This Court vacated Bennett's conviction on the grounds that the State failed to prove beyond a reasonable doubt that LeFave was the "owner" of the trailer. *Id.* at 280, 246 P.3d at 389. We explained that LeFave parted with possession of the trailer by delivering it to Bennett and did not regain superior possessory rights upon Bennett's breach of contract for two reasons. *Id.* First, under the UCC, an unpaid seller of goods can sue for the unpaid price pursuant to Idaho Code section 28-2-709(1)(a), but cannot simply retake the goods. *Id.* Second, LeFave's purported retention of title was ineffective. *Id.* The UCC limits the ability to reserve title in goods sold: "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." I.C. § 28-2-401(1). To create an enforceable security interest, sellers must satisfy the requirements in Idaho Code section 28-9-203(b)—the only exception is for goods that the buyer has not yet obtained possession of. *Id.* Because LeFave had not satisfied the requirements in Idaho Code section 28-9-203(b), he had no enforceable security interest in the trailer and thus no superior possessory right to the trailer at the time of Bennett's alleged theft. *Id.* Therefore, we concluded, LeFave was not the "owner" of the trailer, and Bennett's conviction could not stand. *Id.*

*Bennett*'s reasoning applies with equal force in this case. Dix's alleged theft involved a sale of goods, so the UCC applies. I.C. § 28-2-102; *Bennett*, 150 Idaho at 280, 246 P.3d at 389. Like Bennett, Dix gained title to the goods once he took possession of them. Under the UCC, unless the parties agree otherwise, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." I.C. § 28-2-401(2). One way in which goods are delivered is by making them available for the buyer to pick up at the seller's place of business. 2 Hawkland UCC Series § 2-401:3; I.C. § 28-2-503(1) ("Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery."). Thus, Dix acquired title to the goods when Grainger made them available for pick-up.

That Dix also acquired a superior possessory right to the goods at the moment of delivery is even clearer here than it was in *Bennett*. Here, Grainger did not even attempt to create a security interest in the goods it sold to Dix, so it cannot claim a superior possessory interest in the goods under Idaho Code section 28-2-401(1). As a result, although Grainger could sue Dix for the unpaid price of the goods once that became due, it did not have a superior possessory

6

right to the goods at the moment of delivery or at any point thereafter. *See Bennett*, 150 Idaho at 280, 246 P.3d at 389. Therefore, just as it was in *Bennett*, the evidence presented by the State is insufficient to sustain Dix's conviction under Idaho Code section 18-2403.

This result is not an anomaly. It is in line with previous decisions of this Court involving the same issues. For example, in *State v. Jesser*, the Court decided that title to the goods had not passed at the time of the alleged theft. *State v. Jesser*, 95 Idaho 43, 52, 501 P.2d 727, 736 (1972). The defendants had entered into a contract to buy grain, agreeing to pick up each load at the seller's granary, transport it to another location for weighing, and then pay for it. *Id.* at 46, 501 P.2d at 730. After the seller realized the defendants were secretly transferring some grain to another truck before weighing the remainder, the defendants were each charged with "petit larceny" under Title 18, Chapter 46 of the Idaho Code (now repealed). *Id.* at 47, 501 P.2d at 731. The Court noted that under the UCC, title passes upon the seller's delivery of the goods unless the parties agree otherwise. *Id.* at 51, 501 P.2d at 735. The general rule did not apply in this case though, the Court reasoned, because the jury could determine accurate weighing of the grain was part of the sales contract. Therefore, the defendants had nullified the contract by making accurate weighing impossible. *Id.* at 52, 501 P.2d at 736. With no enforceable contract in place, title did not pass to the defendants at the point of delivery. *Id.*

The Court's reasoning in *Jesser* leads to the opposite result here. For the reasons stated above, delivery was complete when Grainger made the goods available to Dix for pick-up. There were no unfulfilled conditions in Grainger's sales contract with Dix that nullified their agreement. Thus, the general rule applies: title passed to Dix upon delivery.

### B. The district court erred in denying Dix's motion for judgment of acquittal for burglary.

Dix's conviction for burglary must also be reversed. We agree with the reasoning in the amicus curiae brief filed by Commercial Law Amicus Initiative: Dix did not commit burglary by pawning the goods because the pawn shop received good title to the goods.

Dix had good title to the goods at the time he pawned them. The State alleged that Dix obtained the goods fraudulently by purchasing them on credit without intending to pay. Assuming that is true, Dix's title to the goods was voidable by Grainger. 17A Am. Jur. 2d *Contracts* § 210. But voidable title is good title unless and until the seller elects to reject the sales contract. *See Voidable*, Black's Law Dictionary (11th ed. 2019) (defining "voidable" as "[v]alid

*until annulled*") (emphasis added). The authorities cited by the State are not to the contrary. The State cites the following example in the third edition of Lawrence's Anderson on the Uniform Commercial Code:

> Buyer gave a check to Seller in payment for the purchase of goods. Seller gave Buyer possession of the goods even though the check had not yet cleared. Upon presentment to the payor bank, Buyer's check was returned for insufficient funds. By the time that the check was returned to Seller, Buyer had already sold the goods to Purchaser. *Even though Buyer has no right to retain the goods as against Seller*, Buyer had the power to transfer a good title to the goods to Purchaser under U.C.C. § 2-403(1)(b).

3A Anderson U.C.C. § 2-403:45 (3d. ed.) (emphasis in State's response brief). However, the sentence that precedes this example makes clear that the buyer has no such right *if the seller voids the sales contract*, because the buyer's title is voidable, not void: "U.C.C. § 2-403(1) provides a rule under which a person who has *voidable* title to goods can transfer a good title to the goods to a good faith purchaser for value." *Id.* (emphasis added). Because Grainger took no action to void its sales contract with Dix, Dix had good title to the goods at the time he pawned them.

The State also cites the following excerpt from a footnote from a Wyoming case: "When, because of his fraud, the accused obtains voidable title to property, he may sell them to a good-faith purchaser for value; *he just does not have superior title to that of the true owner.*" *Bohling v. State*, 2017 WY 7, ¶ 29 n.8, 388 P.3d 502, 509 n.8 (Wyo. 2017) (emphasis in State's response brief). However, this statement is dicta. *Bohling* involved a charge of obtaining property by false pretenses arising from a county official's use of a county credit card to purchase camera equipment for personal use. *Id.* ¶ 11, 388 P.3d at 505. Because the county was the buyer—not Bohling—Bohling never acquired even voidable title. *See Id.* ¶¶ 38-44, 388 P.3d at 512-13. Moreover, nothing about this excerpt suggests that the seller would be relieved from having to take some action to divest the purchaser of voidable title or that the seller would have a superior possessory right to the property. Additionally, accepting the State's argument that Dix's fraudulent intent rendered his purchase of the goods void would promote lawlessness in the sense that it would allow sellers to physically retake goods from buyers who fail to pay.

Because Dix had voidable title to the goods, he was able to transfer good title to Vista Pawn. Under the UCC, "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." I.C. § 28-2-403(1). This rule applies even when "[t]he delivery was

8

procured through fraud punishable as larcenous under the criminal law." *Id.* We applied this good faith purchaser rule in *W. Idaho Prod. Credit Ass'n v. Simplot Feed Lots, Inc.*, 106 Idaho 260, 678 P.2d 52 (1984), a case involving farmers who sold barley to a middleman, who in turn sold the barley to Simplot and never paid the farmers. We held that the farmers' conversion claim again against Simplot could not succeed because, under Idaho Code section 28-2-403(1), title had passed to Simplot as a good faith purchaser for value. *Id.* at 262–63, 678 P.2d at 54–55.

The good faith purchaser rule serves important policy interests. It promotes fairness by placing the risk of loss on the party in the better position to avoid it: the seller, who could have demanded payment on delivery. Additionally, placing the risk on good faith purchasers would impede commerce by requiring purchasers to conduct substantial due diligence in order to assure themselves, to the extent possible, that the original purchaser did not defraud the seller. Other courts have recognized this rule and its rationales. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Waste to Charity, Inc.*, 483 F. Supp. 2d 766, 774 (W.D. Ark. 2007) (explaining that the purpose of the good faith purchaser rule is to "promote finality in commercial transactions and thus encourage purchases and to foster commerce").

In this case, there was no suggestion that Vista Pawn was not a good faith purchaser for value. Even the State concedes that "[a]s between Grainger and Vista Pawn, Vista Pawn is protected as a 'good faith purchaser of goods.'" Therefore, Dix transferred good title to Vista Pawn. (To be precise, he transferred the lesser property interest of "rights to the goods in pawn." When he later failed to redeem the goods, Vista Pawn became the full owner, or title holder, pursuant to its agreement with Dix.)

Because Vista Pawn received what it bargained for, Dix did not commit burglary by pawning the goods. However, for the first time on appeal, and contrary to its statements to the trial court, the State argues that Grainger could be the victim of Dix's burglary even if Vista Pawn was not. Even if this argument was preserved, the State does not explain why Grainger would be entitled to the proceeds of the pawn transaction. As noted above, Grainger could sue Dix for the unpaid purchase price of the goods once that became due, but that does not mean it would be entitled to proceeds from the pawn transaction. Therefore, whether the victim of Dix's alleged burglary is considered to be Vista Pawn or Grainger, Dix's burglary conviction cannot be sustained.

## IV.    CONCLUSION

We reverse Dix's convictions and remand the case to the district court with instructions to enter a judgment of acquittal on both counts.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.