# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45642

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, June 2019 Term |
| | ) | |
| v. | ) | Opinion filed: August 26, 2019 |
| | ) | |
| CHAD SCHIERMEIER, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Jonathan P. Brody, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise for Appellant. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

---

MOELLER, Justice.

## I.      NATURE OF THE CASE

Following a seven-day trial, a Blaine County jury found Chad Schiermeier guilty of grand theft. Schiermeier appeals from his judgment of conviction, arguing that the State did not prove the elements of grand theft beyond a reasonable doubt. Schiermeier also argues that the district court abused its discretion by imposing an excessive sentence. For the reasons stated below, we affirm.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

In the early 1990s, the Blaine County Sheriff's Office started Blaine County DARE/PAL Inc. ("DARE/PAL"). According to its articles of incorporation, DARE/PAL was organized exclusively for charitable and educational purposes within the meaning of 26 U.S.C. § 501(c)(3) in order "to foster, promote, encourage and increase the knowledge, and understanding of

1

alcohol and drug addictions or related problems." Art. III, Art. of Inc. To further its purpose, DARE/PAL offered outdoor-related group activities during the summer months to children between the ages of nine and sixteen. Some of the activities included hiking, golfing, fishing, rafting, and attending baseball games. The activities were primarily funded by the Blaine County Sheriff's Office through drug forfeiture funds and by local philanthropists through donations and grants.

Chad Schiermeier was a deputy sheriff for the Blaine County Sheriff's Office from 1999 to 2015, serving as a middle school resource officer and the director of DARE/PAL. In 2002, in accordance with the DARE/PAL bylaws,[1] the board of directors appointed Schiermeier to be the manager of DARE/PAL.

The bylaws and articles of incorporation gave the manager, and therefore Schiermeier, wide discretion and authorization to spend the DARE/PAL funds in furtherance of the program:

> Duties. All corporate powers shall be exercised by or under the authority of and the affairs of the nonprofit corporation managed under the direction of the Board of Directors, except the Manager is authorized to exercise corporate powers, as set forth in the Articles of Incorporation and these By-laws. The board of directors may:
>
> . . . .
>
> (f) audit bills and disburse funds of the corporation;
> (g) employ agents;
> (h) determine what, if any, compensation shall be paid to a director of a project; and
> (i) devise and carry into execution such other measures as it deems proper and expedient to promote the objects of the nonprofit corporation and to best protect the interests and welfare of its members.

Art. V, section 4, Bylaws. "A manager is authorized to exercise some or all of the powers which would otherwise be exercised by or under the authority of the Board of Directors." Art. IX, Art. of Inc. In order to effectively carry out his managerial duties, the board named Schiermeier an authorized user of the DARE/PAL bank account.

---

[1] Article VI of the DARE/PAL bylaws provide:
> The Board of Directors may appoint a Member to be a Manager, who is authorized to exercise some or all of the powers which would otherwise be exercised by the Board of Directors. To the extent so authorized, such Manager shall have the duties and responsibilities of the Directors, and the Directors shall be relieved to that extent from such duties and responsibilities. The Board of Directors may remove the Manager at any time, with or without cause, by a majority vote of the Board of Directors.

Following Schiermeier's appointment as manager, the board slowly became inactive, neglecting its duties and entrusting Schiermeier to handle all things related to DARE/PAL. By 2009, Schiermeier was the sole corporate officer involved in running the affairs of the program.

In July 2015, a charitable group called 100 Men Who Care donated approximately $5,100 to DARE/PAL. Shortly thereafter, the group followed up with Schiermeier's supervisor, Lieutenant Carpita, to see how their donation had been spent. Carpita in turn asked Schiermeier. Several months went by with vague responses, if any, from Schiermeier. Finally, in November 2015, after more than three months of requests and meetings, Schiermeier provided Carpita with the requested DARE/PAL bank records. After reviewing the records, Carpita became suspicious after he noticed "a lot of cash withdrawals through the ATM . . . during times when the PAL activities were not going on." Consequently, Carpita decided to have the matter independently investigated by the Idaho State Police.

The bank records revealed that from 2009 to 2015, Schiermeier made several extravagant purchases of high-end outdoor equipment and clothing, including $2,365.91 for Swarovski binoculars, $429.00 for a single sleeping bag, $292.40 for safari-grade hunting ammunition, $1,459.90 for two camera lenses, $69.00 for a goose down pillow, and $617.52 for mountaineering boots, gaiters, and a watch. Schiermeier also made multiple cash withdrawals totaling $17,745.00 in 2009, $17,120.00 in 2010, $19,765.00 in 2011, $13,320.00 in 2012, $12,200.00 in 2013, $4,260.00 in 2014, and $7,820.00 in 2015.

Following the independent investigation by the Idaho State Police, the State charged Schiermeier with one count of grand theft.[2] The information alleged the following:

> That the Defendant, CHAD R. SCHIERMEIER, on or about January, 2009, up to and including December, 2015, in the County of Blaine, State of Idaho, did wrongfully take, and/or obtain, and/or withhold, and/or exercise unauthorized control over, lawful money of the United States, with an aggregate value in excess of one thousand dollars ($1,000.00), from the owner, Blaine County D.A.R.E/P.A.L., INC., with the intent to deprive another of property, and/or to appropriate to himself certain property of another, and/or to appropriate to a third person certain property of another, to-wit: through a common scheme or plan did unlawfully, and without authority, withdraw monies from US Bank account number XXXX-8338 by cash, and/or check withdrawals, and/or the use of a financial transaction card, Visa debit card number XXXX-7161 and/or XXXX-1876, from an account exclusively for the use of the Blaine County

---

[2] The State initially charged Schiermeier with six counts of misuse of public moneys by public officers and public employees. *See* I.C. § 18-5701.

D.A.R.E./P.A.L., INC., to purchase merchandise and/or withdraw money for his personal use where the aggregate amounts of the separate incidents exceed one thousand dollars ($1000.00), in violation of Idaho Code §§ 18-2403(1), 18-2407(1)(b)(1), 18-2408(2)(a) GRAND THEFT, a FELONY.

The jury trial commenced on August 23, 2017. After the State rested its case, Schiermeier moved for a judgment of acquittal pursuant to Idaho Criminal Rule 29(a). The district court denied his motion. At the end of the trial, the jury returned a verdict of guilty. Schiermeier once again moved for a judgment of acquittal pursuant to Rule 29(c), or in the alternative, a new trial pursuant to Rule 34. Schiermeier subsequently withdrew his motion because it was untimely. Schiermeier then moved to dismiss the action in the interest of justice pursuant to Rule 48(a)(2). The district court denied his motion.

On November 7, 2017, the district court sentenced Schiermeier. The State recommended a sentence of fourteen years with six years fixed. Schiermeier recommended probation or a period of retained jurisdiction to participate in a rider. The district court followed the State's recommendation and sentenced Schiermeier to a unified sentence of fourteen years with the first six years fixed. No fine was imposed. The district court also ordered Schiermeier to pay $86,868.03 in restitution to DARE/PAL. Schiermeier timely appealed.

## III. STANDARD OF REVIEW

"This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Tryon*, 164 Idaho 254, 257, 429 P.3d 142, 145 (2018) (quoting *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017)).

"Appellate review of a sentence is based on an abuse of discretion standard." *State v. Sheahan*, 139 Idaho 267, 284, 77 P.3d 956, 973 (2003). "Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus, a clear abuse of discretion." *Id*.

## IV. ANALYSIS

**A. The State presented substantial evidence to support the jury's determination that Schiermeier's taking, obtaining, withholding, or control of the DARE/PAL funds was wrongful and unauthorized.**

Schiermeier contends that the State did not present substantial evidence at trial to convict him of grand theft because the State failed to show that Schiermeier's taking, obtaining,

withholding, or control of the DARE/PAL funds was wrongful or unauthorized. Based upon our review of the proceedings and the trial record, we see no reason to disturb the jury's verdict.

When a criminal defendant challenges the sufficiency of the evidence supporting a judgment of conviction entered upon a jury verdict, "[t]he relevant inquiry is not whether this Court would find the defendant guilty beyond a reasonable doubt but whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Eliasen*, 158 Idaho 542, 546, 348 P.3d 157, 161 (2015) (quoting *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012) (emphasis in original)). "In conducting this analysis, . . . we do not substitute our judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *Adamcik*, 152 Idaho at 460, 272 P.3d at 432.

"Thus, 'the only inquiry for this Court is whether there is substantial evidence upon which a reasonable jury could have found that the State met its burden of proving the essential elements' of the charged crimes 'beyond a reasonable doubt.' " *Eliasen*, 158 Idaho at 546, 348 P.3d at 161 (quoting *Adamcik*, 152 Idaho at 460, 272 P.3d at 432). "Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *Id*.

Here, viewing the evidence in the light most favorable to the State, we hold that there is substantial evidence in the record to support Schiermeier's conviction for grand theft. The State charged Schiermeier with grand theft by wrongfully taking, obtaining, withholding, or exercising unauthorized control over money valued in excess of $1,000 from DARE/PAL with the intent to deprive or appropriate to himself the property of another. *See* I.C. §§ 18-2403(1), 18-2407(1)(b), 18-2408(2)(a). The jury was instructed as follows:

> In order for the defendant to be guilty of Grand Theft, the state must prove each of the following:
>
> 1. On or about or between January 2009 and December 2015
> 2. in the state of Idaho
> 3. the defendant Chad Schiermeier *wrongfully* took, obtained or withheld property or money described as: funds of Blaine County D.A.R.E./P.A.L., Inc.,
> 4. another person was the owner of the funds
> 5. with the intent to deprive an owner of the funds or to appropriate the funds, and
> 6. the funds exceeded one thousand dollars ($1000) in value

OR

In order for the defendant to be guilty of Theft by Unauthorized Control, the state must prove each of the following:

1. On or about or between January 2009 and December 2015
2. in the state of Idaho
3. the defendant Chad Schiermeier took or obtained or withheld money of Blaine County D.A.R.E./P.A.L., Inc.,
4. another person was the owner of the funds,
5. the defendant knew that the defendant was *not authorized* by the owner to do so, and
6. the defendant had the intent to deprive the owner of such funds
7. the funds exceeded one thousand ($1000) in value

(Emphasis added). As conceded by both sides, the jurors did not have to agree on the form of theft or the value, so long as each juror found a value over $1,000. *See* I.C.J.I. 555 ("If you are satisfied beyond a reasonable doubt and unanimously agree that the defendant committed the crime of Theft, you should find the defendant guilty. You are not required to agree as to which particular form of theft the defendant committed.").

The only element of grand theft that is at issue is the "wrongfully" or "not authorized" element. On this element, the State's position at trial was that Schiermeier wrongfully and without authorization took the DARE/PAL funds when he used the funds to purchase high-end outdoor items for his personal use, and when he made several large cash withdrawals for undocumented purposes during the winter months when there were no DARE/PAL activities taking place. On appeal, Schiermeier contends that, in order to prove he wrongfully took the funds, the State was required to show that he used the funds *exclusively* for non-DARE/PAL purposes. As Schiermeier's counsel explained during oral argument, "there is nothing wrong with Schiermeier using an item once and then gifting it to himself . . . or buying something initially for a personal use and then using it for the corporation." We conclude that Schiermeier's argument lacks merit.[3]

Schiermeier provides no authority to support his contention that the State was required to show he used the funds exclusively for non-DARE/PAL purposes. The district court correctly instructed the jury that in order to reach a guilty verdict, the taking, obtaining, or withholding of the DARE/PAL funds had to be "wrongful" or "unauthorized." Although the court did not define

---

[3] Accepting Schiermeier's exclusivity argument would also mean accepting that Schiermeier would be authorized to purchase a $10,000 Rolex watch with the DARE/PAL funds provided that he used the watch at least once during a DARE/PAL activity, such as to keep time during a relay race.

6

either term for the jury, it was not required to. When terms are of "common usage and are sufficiently generally understood," trial courts do not need to further define these words with jury instructions. *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996). The common understanding of "wrong" is "not according to the moral standard," "without regard for what is proper or just," or "something wrong, immoral, or unethical; *esp*: principles, practices, or conduct contrary to justice, goodness, equity, or law." Merriam Webster's Collegiate Dictionary 1367 (10th ed. 1993). The common understanding of "unauthorized" is "without authority or permission." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unauthorized (last visited June 19, 2019). Based on the evidence presented at trial, the jury could have determined for itself that Schiermeier's use of the funds was "wrongful" or "unauthorized" beyond a reasonable doubt.

At trial, both the State and the defense explained to the jury that Schiermeier had complete authorization to use the DARE/PAL funds, so long as his use was on behalf of and in furtherance of the program, as limited by the articles of incorporation, the bylaws, and the program's official designation as a § 501(c)(3) corporation. The State presented substantial evidence from which a reasonable jury could conclude that Schiermeier did not use the DARE/PAL funds to further the purpose of the program, but instead used the funds to further his own personal interests.

The State presented the jury with account summaries showing that from 2009 to 2015 Schiermeier made several purchases of high-end outdoor equipment and clothing with the DARE/PAL financial transaction cards. Most of the purchases related specifically to hunting and archery. For example, Schiermeier purchased big game hunting videos, safari-grade hunting ammunition, a pistol grip head, a Rackulator (antler scoring device), an optimizer, an arrow rest, and a weather resistant men's camo jacket with matching pants and beanie. The State showed that neither hunting nor archery was an approved DARE/PAL activity by admitting DARE/PAL advertisements from prior years. The advertisements displayed the types of activities that DARE/PAL offered, none of which included hunting or archery. Several witnesses also testified that hunting and archery were never DARE/PAL activities. Schiermeier, on the other hand, ran an outfitting business on the side and traveled out-of-state on many personal hunting trips, using many of the specified items during these trips, as evidenced by photos in the record.

Moreover, although the State was not required to show that Schiermeier used the items exclusively for personal use, the State did in fact show that Schiermeier used some of the items exclusively as his own. One key purchase, emphasized by the State at trial and the district court at sentencing, was the .375 H & H ammunition. As the district court explained at sentencing, the ".375 H & H ammunition . . . would have no application for that program or law enforcement in any way." The Blaine County Sheriff's Office did not own any guns that used that type of ammunition, and DARE/PAL never put on any activities that used guns of any sort. On the other hand, that type of ammunition is often used for hunting.

The State also sufficiently proved that Schiermeier made multiple cash withdrawals during the winter months when there were no DARE/PAL activities taking place. The State introduced a recording of a meeting between Schiermeier and his supervising lieutenant, Carpita, where Schiermeier explained that he withdrew thousands of dollars in case he needed cash during one of the activities to pay for lunches, for example. Schiermeier also explained that he would use the cash to reserve spots at sporting events during the winter months. However, Schiermeier did not have any receipts to substantiate his explanation, which he was required to keep. Mary Kim Deffe, the DARE/PAL accountant and former treasurer, testified that Schiermeier signed an engagement letter stating that he would keep all records and data in the event that there was any misunderstanding or audit by the IRS. Moreover, in 2012, when Deffe noticed "more cash going out than [she] had noticed in prior years," she confronted Schiermeier and he assured her that the cash was going to DARE/PAL activities. Schiermeier had also previously assured Deffe that he had receipts for all of the expenditures.

Schiermeier attempted to answer the State's allegations by presenting his own evidence and witnesses. The defense repeatedly argued that there was a lack of supervision over Schiermeier from 2009 to 2015. The State discredited this argument by explaining that a lack of supervision or control is not a defense to theft. The defense called three witnesses to rebut the State's case. One testified that he saw Schiermeier use each of the specified items during DARE/PAL activities. The State effectively cross-examined the witness by showing potential bias. Finally, the defense argued that Schiermeier could compensate himself as the director of the program, yet explained that "[t]here's no evidence that he ever did that, but he had the right to do it." Schiermeier had also earlier admitted during a meeting with Carpita that the cash "doesn't

belong to me" and that he kept it in an envelope in case he needed it for any DARE/PAL activities, thereby negating his argument that he withdrew the cash for compensation.

Based on the evidence presented at trial, the jury was entitled to make a logical and permissible inference that Schiermeier used the DARE/PAL funds for his own personal interests, rather than in the interests of the program. Such an inference would support a finding that Schiermeier used the DARE/PAL funds *wrongfully* or *without authorization*. Therefore, we conclude there is substantial evidence in the record to support Schiermeier's conviction for grand theft.

**B.  The district court did not abuse its discretion in sentencing Schiermeier to fourteen years with six years fixed.**

Schiermeier contends that the district court abused its discretion when it sentenced him to an indeterminate sentence of fourteen years in prison, with the first six years fixed, for grand theft. According to Schiermeier, the mitigating circumstances warranted a more lenient sentence. The State contends that the district court applied and balanced the goals of sentencing and concluded that a lesser sentence would depreciate the serious nature of the crime.

As noted, "[a]ppellate review of a sentence is based on an abuse of discretion standard." *Sheahan*, 139 Idaho at 284, 77 P.3d at 973. "Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus, a clear abuse of discretion." *Id*. "A sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court." *Id*. "A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary 'to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to the given case.' " *Id.* (quoting *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982)).

"Where an appellant contends that the sentencing court imposed an excessively harsh sentence, the Court conducts an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest." *Id*. "For the purpose of review, this Court considers the fixed term of confinement as the sentence imposed." *State v. Hansen*, 138 Idaho 791, 797, 69 P.3d 1052, 1058 (2003).

Here, the district court sentenced Schiermeier to fourteen years with six years fixed. Under Idaho Code section 18-2408(2)(a), grand theft is punishable "by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison for not less than one (1) year

nor more than fourteen (14) years, or by both such fine and imprisonment." Therefore, because Schiermeier was sentenced within the statutory limits, it is his burden to prove that the sentence of six years of imprisonment is unduly harsh under any rational view of the facts.

Schiermeier argues that the district court should have sentenced him to a lesser term of imprisonment, retained jurisdiction, or placed him on probation in light of the mitigating factors, including his lack of any criminal history, absence of any substance abuse or mental health issues, acceptance of responsibility and remorse, and strong support network. According to Schiermeier, the district court did not give adequate weight to the statements of support and good character, and failed to properly weigh Schiermeier's contribution to the community through DARE/PAL and his time as a resource officer.

The district court properly based its sentencing decision on the objectives of criminal sentencing which have been long-recognized by the Idaho appellate courts. The court acknowledged that "the primary objective of sentencing is protection of society" as well as the "related goals of deterrence, rehabilitation, and retribution." *See Sheahan*, 139 Idaho at 284, 77 P.3d at 973. The district court also recognized that the "reasonableness of the sentence requires consideration of the nature of the offense, the character of the offender, and protection of the public interest." Keeping these objectives in mind, the court reviewed and weighed the aggravating and mitigating factors identified in Idaho Code section 19-2521. A finding of only one of the six factors under section 19-2521(1) is necessary to support a prison sentence, I.C. § 19-2521(1), while the factors under section 19-2521(2) do not "control[ ] the discretion of the court, [but] shall be accorded weight in favor of avoiding a sentence of imprisonment," I.C. § 19-2521(2).

In reviewing the aggravating factors under section 19-2521(1), the court first considered whether a lesser sanction would depreciate the seriousness of the crime. The court found that it would. The court explained that placing Schiermeier on a rider—*i.e.*, retaining jurisdiction—would be inadequate because Schiermeier has no history of substance abuse or addiction which contributed to the crime, thereby making in-custody treatment pointless. The court also found that a fine alone would be inadequate because it would not "serve the purposes of sentencing," and probation would be inadequate because "[t]here's an undue risk whether a crime will be committed on probation." The court looked at the harm that was caused by Schiermeier's conduct, explaining that he stole thousands of dollars from the community over a span of six

10

years, harming the program financially and the public's trust.[4] Finally, the court found that Schiermeier did not fully take responsibility for his actions, as evidenced by the PSI. Schiermeier was focused solely on the crime's impact on himself, stating that he was not a criminal and wanted his life back.

In reviewing the mitigating factors under section 19-2521(2), the court acknowledged that Schiermeier had a lot of support from family and friends, showing that he "did a lot of positive." Schiermeier also had no criminal history and complied with all court conditions while he was released pending trial. The court noted that Schiermeier seemed to show more remorse at the sentencing hearing than he did in his PSI. The court also noted that Schiermeier's time in jail had taken a serious toll on his health as evidenced by his significant weight loss and gout diagnosis. After considering the objectives of sentencing and after weighing the aggravating and mitigating factors that were present, the court concluded that a term of incarceration was the only appropriate sentence. "A lesser sentence would depreciate the serious nature of the crime, would not protect the public interest, and would not appropriately punish [him]." Thus, the court sentenced Schiermeier to fourteen years with six years fixed.

The reasons outlined by the district court for its sentence are sufficient to justify the sentence. It is evident from the record that the district court did take into account Schiermeier's lack of criminal history, his eventual remorse, the community statements of support and good character, and his contribution—as well as harm—to the community. Although we agree that the sentence is rather high for a first-time offender, based on the circumstances of this case, we conclude that it is not excessive to a degree where we are compelled to hold that the district court abused its discretion. Therefore, we conclude that the district court's sentence of fourteen years with six years fixed was not excessively harsh.

## V. CONCLUSION

We affirm Schiermeier's judgment of conviction for one count of grand theft. We also affirm the district court's sentence of fourteen years with six years fixed.


Chief Justice BURDICK, and Justices BEVAN, STEGNER and Justice Pro Tem WALTERS **CONCUR.**

---

[4] The record shows that the DARE/PAL program no longer exists in Blaine County due in part to insolvency.

11