**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49128**

| | | |
|---|---|---|
| CHAD SCHIERMEIER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Twin Falls, August 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: December 7, 2022 |
| | ) | |
| STATE OF IDAHO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Jonathan P. Brody, District Judge.

The decision of the district court is affirmed.

Thomas R. Green, *Pro Hac Vice*, Casper, Wyoming and Luboviski, Wygle, Fallowfield & Ritzau, P.A., Ketchum, for appellant, Chad Schiermeier. Thomas R. Green argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kenneth K. Jorgensen argued.

_____

STEGNER, Justice.

Chad Schiermeier appeals from the summary disposition of his petition for post-conviction relief. In 2017, Schiermeier was charged and convicted of one count of grand theft for stealing money from the Blaine County Sheriff's DARE program. Schiermeier, a Blaine County Deputy Sheriff, had been the manager of the program for several years and had spent large sums of the program's money on various items for his personal use. Schiermeier appealed his conviction and sentence to this Court, which we affirmed. *State v. Schiermeier*, 165 Idaho 447, 447 P.3d 895 (2019) ("*Schiermeier I*").

In 2020, Schiermeier, through the same private attorney who had represented him during his trial, petitioned for post-conviction relief, arguing that his appellate counsel (a Deputy State Appellate Public Defender) had been ineffective for failing to raise several issues in his direct appeal. The State moved for summary disposition, which the district court granted. Schiermeier timely appeals. For the reasons set forth below, we affirm the district court's summary disposition

1

of Schiermeier's petition for post-conviction relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early 1990s, the Blaine County Sheriff's Department founded D.A.R.E./P.A.L. Inc., ("DARE"),[1] to fund outdoor activities for children in the Blaine County community. DARE was funded by the Sheriff's office through its drug forfeiture funds and by donations and grants from various local individuals and entities. DARE was set up as a 501(c)(3) corporation and had a board of directors. The articles of incorporation provided that DARE was "organized exclusively for the charitable and educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code." In 1999, Schiermeier was hired by the Blaine County Sheriff's Department to assist in running the DARE program. He also worked for Blaine County as a deputy sheriff. In 2002, Schiermeier became a manager of DARE and ran the program with another deputy sheriff. For unexplained reasons, DARE's board of directors stopped conducting meetings, and in 2009, Schiermeier became the sole corporate officer and manager in charge of DARE and its funds. Once the other officers left the organization, Schiermeier appeared to be the sole authorized user of the DARE bank account and possessed a debit card linked to that account. Sometime in 2015, DARE received a donation of $5,100 from a local charitable group. The group later contacted Schiermeier's direct supervisor, Lieutenant Carpita, and the County Sheriff to follow up on its donation to see how the money had been spent. Carpita asked Schiermeier to provide an accounting of that donation. After several inquiries went unanswered by Schiermeier, Carpita asked Schiermeier for DARE's bank records and the DARE debit card. After nearly two months, Carpita finally received the bank records from Schiermeier. The records reflected that Schiermeier had used the DARE debit card to purchase multiple items of luxury hunting and outdoor equipment, apparently for his own use. Schiermeier had also used the debit card to make multiple significant cash withdrawals from ATM machines. These purchases and withdrawals occurred from 2009 through 2015. The cash withdrawals totaled $92,230 over the course of those seven years.

In 2017, the State charged Schiermeier with one count of felony grand theft in violation of Idaho Code sections 18-2403(1), 18-2407(1)(b)(1), and 18-2408(2)(a).[2] The case proceeded to trial, at which a jury convicted Schiermeier. Schiermeier's trial counsel, the same attorney who

---

[1] D.A.R.E. stands for "Drug Abuse Resistance Education," and P.A.L. stands for "Police Activities League."

[2] Schiermeier was originally indicted on six counts of misuse of public money by public officers and public employees. *See* I.C. § 18-5701.

now represents him in these post-conviction proceedings, unsuccessfully advanced several novel legal theories throughout the trial. Following the jury verdict, the district court sentenced Schiermeier to a unified term of fourteen years with six years fixed. Schiermeier was also ordered to pay restitution to DARE in the amount of $86,868.03.

Schiermeier appealed his conviction. Trial counsel explained in the briefing that, though he was admitted *pro hac vice* to try the criminal case in Idaho, he did not feel equipped to handle the appeal because he is a practicing attorney in Wyoming and a former prosecutor from Nevada and, therefore, did not have any prior appellate criminal defense experience in Idaho. As a result of his counsel's unwillingness to pursue an appeal in Idaho, a Deputy State Appellate Public Defender (SAPD) was appointed to represent Schiermeier in his appeal. Schiermeier's trial counsel remained in frequent contact with the Deputy SAPD prior to the filing of the appellate brief. Trial counsel and the Deputy SAPD engaged in numerous emails over the course of three months, in which trial counsel offered his view of the issues that should be raised on appeal. Eventually, communications between the Deputy SAPD and trial counsel broke down, and the Deputy SAPD informed Schiermeier's trial counsel that it would no longer communicate with him regarding Schiermeier's appeal or any other pending case.

The Deputy SAPD argued on appeal that the State had failed to prove the elements of grand theft beyond a reasonable doubt. Specifically, the Deputy SAPD contended that, because he was the sole director, Schiermeier's taking of the DARE money was not wrongful or unauthorized. The Deputy SAPD also argued that the district court abused its discretion by sentencing Schiermeier to fourteen years with six years fixed for one count of grand theft. This Court affirmed Schiermeier's conviction and sentence in *Schiermeier I*, concluding there had been sufficient evidence to support the jury's verdict that Schiermeier committed felony grand theft and that the district court had not abused its discretion in sentencing Schiermeier in the way that it had. 165 Idaho at 447, 447 P.3d at 895.

The following year, Schiermeier (represented again by his original trial counsel) filed a petition for post-conviction relief, primarily contending that the Deputy SAPD had been ineffective for failing to raise several issues that he had suggested be raised on appeal. In response, the State moved for summary disposition of Schiermeier's petition. The district court heard arguments on the State's motion for summary disposition and thereafter issued an order granting

the State's motion. The district court dismissed Schiermeier's petition with prejudice. Schiermeier timely appeals that dismissal.

## II.    STANDARD OF REVIEW

Summary disposition of a petition for post-conviction relief is appropriate if the applicant's evidence raises no genuine issue of material fact. On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file and will liberally construe the facts and reasonable inferences in favor of the non-moving party. A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioner's conclusions. When the alleged facts, even if true, would not entitle the applicant to relief, the trial court may dismiss the application without holding an evidentiary hearing. Allegations contained in the application are insufficient for the granting of relief when (1) they are clearly disproved by the record of the original proceedings, or (2) do not justify relief as a matter of law.

*Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010) (quoting *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007)).

## III.    ANALYSIS

### A. The district court correctly granted the State's motion for summary disposition of Schiermeier's petition for post-conviction relief.

The gravamen of Schiermeier's petition for post-conviction relief is that he received ineffective assistance of counsel during his direct appeal due to the Deputy SAPD's purported failure to raise several issues. Schiermeier makes three specific arguments regarding ineffective assistance of counsel. First, he argues that Idaho Code section 30-30-304, which embodies the "ultra vires" doctrine for non-profit corporations, prevented the State from pursuing criminal charges against Schiermeier. Second, Schiermeier argues that the "traditional separation between criminal law and contract law" barred the State from charging him with grand theft. And third, Schiermeier argues that DARE as a corporation was not an "owner" of the property taken by him, which is an essential element of a theft charge. Finally, he argues that the district court somehow lost subject matter jurisdiction through the course of the trial. Each claim will be discussed in turn.

Criminal defendants retain the right to effective assistance of counsel both at trial and on appeal, as guaranteed by the Sixth Amendment of the United States Constitution and Article 1, section 13 of the Idaho Constitution. *Dunlap v. State*, 159 Idaho 280, 295, 360 P.3d 289, 305 (2015); *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). This Court reviews ineffective assistance claims under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dunlap*,

4

159 Idaho at 296, 360 P.3d at 305. "Additionally, [this Court] use[s] the same test to evaluate ineffective assistance of appellate counsel on direct appeal as we use to evaluate ineffective assistance of trial counsel." *Id.*

"To demonstrate deficient performance of appellate counsel for failure to raise a claim on appeal, the defendant must show that counsel made an objectively unreasonable decision to omit the claim." *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 286 (2000)).

> Courts have recognized that appellate counsel may fail to raise an issue on appeal because counsel "foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Appellate counsel is not deficient for using reasonable professional judgment in deciding the most promising issues for appellate review and counsel is not required to raise issues which are reasonably considered to be meritless. 24 C.J.S. Criminal Law § 2361 (2014). Indeed, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765, 145 L.Ed.2d at 781 (citing *Jones* [*v. Barnes*], 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987).
>
> The United States Supreme Court has stated that when a claim of ineffective assistance of counsel is based on a failure to raise issues on appeal, "*[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.*" *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765, 145 L.Ed.2d at 781 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). The Ninth Circuit has likewise indicated that appellate counsel's failure to raise a claim on appeal is deficient when the omitted "claim was 'clearly stronger than those presented' on appeal." *Hurles v. Ryan*, 752 F.3d 768, 783 (9th Cir. 2014) (quoting *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765, 145 L.Ed.2d at 781)[.]

*Id.* at 296–97, 360 P.3d at 305–06 (some citations omitted) (italics added).

If counsel's performance was deficient, the next step is to determine whether counsel's error resulted in prejudice to the defendant. *Id.* at 297, 360 P.3d at 306. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). Courts need not address both *Strickland* prongs "if the defendant makes an insufficient showing on one" of the prongs. *Dunlap*, 159 Idaho at 297, 360 P.3d at 306 (quoting *Strickland*, 466 U.S. at 697). To survive a motion for summary disposition during post-conviction proceedings, the defendant must show the existence of a genuine issue of material fact relating to both *Strickland* prongs. *Id.* at 296, 360 P.3d at 305.

1. Idaho's "ultra vires" statute is inapplicable to this case, and the Deputy SAPD's decision to omit this issue on appeal was not ineffective.

Throughout the trial, Schiermeier's trial counsel advanced the argument that Idaho Code section 30-30-304, the "ultra vires" statute contained in the Idaho Nonprofit Corporation Act, insulated Schiermeier from criminal liability. Trial counsel repeatedly argued that the ultra vires theory and statute rendered Schiermeier's conduct non-criminal or beyond the ambit of a criminal prosecution. The district court rejected these arguments at several junctures both before and during the trial. At her deposition, the Deputy SAPD stated that she did not raise this issue on direct appeal because it would have contradicted the argument she advanced on appeal, which was that Schiermeier had authorization to use the DARE debit card in the way he did. Specifically, if the Deputy SAPD had argued the ultra vires theory, she would have been conceding that Schiermeier did not have authority to use the funds in the way he did.

This type of an "ultra vires" argument has not been considered by this Court, and, because the merits of that claim affect our ultimate finding that Schiermeier's appellate attorney was not ineffective, we may address them here. *Dunlap*, 159 Idaho at 292, 360 P.3d at 301 ("Because we conclude Dunlap's substantive claims were not pursued in a timely manner, we will address the merits of these claims in the second part of this opinion, where we consider the corresponding claims of ineffective assistance of appellate counsel.").

In granting the State's motion for summary disposition, the district court determined that Schiermeier's argument that the ultra vires statute insulated him from criminal liability was "clearly meritless." As a result, the district court concluded that the Deputy SAPD's failure to raise the ultra vires issue on appeal was not ineffective.

On appeal, Schiermeier begins his argument by explaining the ultra vires statute in Idaho and contending that his actions within the DARE corporation "could not be challenged by corporate outsiders as conflicting with the articles of incorporation." Schiermeier acknowledges that there is no authority for this position in Idaho or anywhere else for that matter. He next asserts that the ultra vires statute raises the issue of standing, and that the Blaine County prosecutor did not have standing to prosecute him on the theory of criminal theft. Schiermeier further attacks the Deputy SAPD's performance at oral argument, contending that she was "beyond her depth" and "did not understand the issue of the law."

Idaho law defines theft as follows: "A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he

wrongfully takes, obtains or withholds such property from an owner thereof." I.C. § 18-2403(1).

Grand theft occurs when the value of the property wrongfully taken exceeds $1,000.

I.C. § 18-2407(1)(b)(1).

> Idaho's ultra vires statute, Idaho Code section 30-30-304, provides in full:

> (1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

> (2) A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceeding may be brought by a director, or by a member or members in a derivative proceeding.

> (3) A corporation's power to act may be challenged in a proceeding against an incumbent or former director, officer, employee or agent of the corporation. The proceeding may be brought by a director, the corporation, directly, derivatively, or through a receiver, a trustee or other legal representative.

I.C. § 30-30-304. "An ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'" *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018) (quoting *Ultra Vires*, BLACK'S LAW DICTIONARY (10th ed. 2014)). However, we have previously limited its application by holding "that the doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." *Id.* (quoting *Power Cnty. v. Evans Bros. Land & Live Stock Co.*, 43 Idaho 158, 166, 252 P. 182, 183 (1926)) (internal quotation marks omitted). Idaho Code section 30-30-304 is based on section 3.04 of the Model Nonprofit Corporation Act, which it copies almost verbatim. *See generally State v. Chambers*, 166 Idaho 837, 842–43, 465 P.3d 1076, 1081–82 (2020) (referring to the Uniform Rules of Evidence and a subsequent comment for assistance interpreting the analogous provision in the Idaho Rules of Evidence). The comments to section 3.04 explain that the ultra vires doctrine:

> *does not validate* corporate conduct that is made illegal or unlawful *by statute* or common law decision. This conduct is subject to whatever sanction, criminal or civil, is provided by the statute or decision. Whether or not illegal corporate conduct is voidable or rescindable depends on the applicable statute or substantive law and is not affected by Section 3.04.

MODEL NONPROFIT CORP. ACT, THIRD EDITION § 3.04 cmt. at 3-12 (2008) (italics added).

This comment clarifies that the ultra vires provision does not serve as a defense to a criminal prosecution. It not only dispels Schiermeier's original argument, but it also leaves no

room for his alternative theory that only corporate officers—not outsiders, including a county prosecutor—can challenge his conduct. In fact, the comment plainly states that illegal corporate conduct "is subject to whatever sanction . . . is provided by the statute." *Id.* Schiermeier's conduct was illegal under Idaho's grand theft statute. Under the comments to the Model Code, the ultra vires statute does not insulate him from liability. Thus, the ultra vires doctrine does not bar a prosecution for theft in Idaho as argued by Schiermeier.

A common sense understanding of the relevant law supports this conclusion as well. If the defense of ultra vires could act as a bar to the criminal prosecution of acts that fall under the definition of grand theft in Idaho, or any jurisdiction for that matter, then the crime of corporate theft (embezzlement) would cease to exist. Appellate counsel's performance cannot have been deficient in failing to raise an unmeritorious argument.

Additionally, this issue is easily resolved considering the Deputy SAPD's deposition testimony regarding her representation of Schiermeier in *Schiermeier I*, as well as the novel nature of Schiermeier's arguments. First, during her deposition, the Deputy SAPD explained exactly why she had not asserted that Schiermeier's conduct was an ultra vires act. Relying on that theory would have undercut her actual theory on appeal, which was that Schiermeier's use and taking of the DARE money was authorized and was within his authority as essentially the sole director in charge of the corporation. This was clearly a "strategic and tactical" decision, which this Court does not second-guess nor view through the distorting lens of hindsight. *Dunlap*, 159 Idaho at 320, 360 P.3d at 329. Furthermore, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* at 297, 360 P.3d at 306 (quoting *Robbins*, 528 U.S. at 288).

Here, the ultra vires issue flagged by Schiermeier early in the proceedings against him was not "clearly stronger" than the Deputy SAPD's argument regarding insufficiency of the evidence which was advanced on direct appeal. Rather, as discussed above, Schiermeier's novel theory lacks merit altogether. Therefore, the abandonment of the argument by Schiermeier's appellate attorney was not deficient.[3]

Further, the Deputy SAPD used "reasonable professional judgment in deciding the most promising issues for appellate review." *Dunlap*, 159 Idaho at 296, 360 P.3d at 305. Because the

---

[3] Notably, at oral argument, Schiermeier's *pro hac vice* counsel abandoned this argument following questioning regarding application of the Model Nonprofit Corporation Act.

Deputy SAPD's representation of Schiermeier was not deficient, this Court need not reach the question of whether Schiermeier suffered prejudice. As a result, we hold that the district court did not err in concluding appellate counsel was not ineffective for failing to raise the ultra vires theory.

2. Principles of contract law accord the criminal prosecution of corporate theft, and the Deputy SAPD's decision declining to raise this issue on appeal was not ineffective.

Schiermeier next argues that, because he had a contractual relationship with DARE, his conduct cannot be prosecuted as a crime. Schiermeier contends that he was prosecuted on a "made-up theory of theft," "never before utilized in any jurisdiction in the nation." He also notes that the jury in his trial was ill-equipped to "resolve complex interpretations of corporate documents." Schiermeier's primary support for this argument, he contends, is *State v. Henninger*, 130 Idaho 638, 945 P.2d 864 (Ct. App. 1997).

During the Deputy SAPD's deposition, trial counsel asked why the *Henninger* case was not raised as an issue on appeal. The Deputy SAPD responded, "If I didn't raise an issue on appeal, I determined, one, it was frivolous or, two, strategically and tactically it was not in my client's best interests to raise that issue." A discussion of the case confirms her testimony.

In *Henninger*, the defendant purchased a truck from a dealership with a down payment of $5,000 in the form of a promissory note and an installment contract for the remaining balance of the purchase price. 130 Idaho at 639, 945 P.2d at 865. The dealership agreed to allow Henninger to drive the truck off the lot with the expectation that he would return the following day to pay the $5,000 promissory note. *Id.* at 639–40, 945 P.2d at 865–66. Henninger did not return to the dealership and could not be located at his residence or place of work. *Id.* The dealership reported the truck as stolen, and Henninger was later arrested, charged with, and convicted of grand theft by unauthorized control. *Id.*

On appeal, the Idaho Court of Appeals framed the relevant question as "whether there was substantial evidence to support the jury's finding that Henninger's possession of the pickup constituted 'unauthorized control' of property of which he was not the 'owner,' as those terms are used in [Idaho Code] Section 18-2403(3)." *Id.* The court then described the relationship between the dealership and Henninger:

> We begin by noting that, as the State acknowledges, Henninger did not exercise unauthorized control when he took possession of the vehicle on June 5, 1995. The State's own evidence showed that a transaction was completed by which the dealership had sold the pickup to Henninger before he drove it away. The installment sale contract executed by both parties provided that Henninger was

9

purchasing the pickup, with the dealership *retaining a security interest in the vehicle to secure Henninger's obligation to make installment payments.* The dealership also signed and delivered to Henninger the documents necessary to transfer title and placed a temporary registration form in the window of the pickup. The dealership thus relinquished to Henninger all the badges of ownership and did everything that it could do to transfer title to him. Consequently, when Henninger drove away in the pickup, it was not the property of another "owner" and his control of the vehicle was not "unauthorized." Indeed, under the parties' contract, the dealership had no further right to possession *except to the extent that it would be entitled to repossess the vehicle upon default by terms of the security agreement and Idaho law governing the rights of secured creditors.*

*Id.* at 640–41, 945 P.2d at 866–67 (italics added).

Next, the court examined the statutory text of Idaho Code section 18-2403(3) before concluding that it was "not persuaded that the legislature intended the statute to apply where a purchaser in a secured credit sale has defaulted in payments and the creditor has thereby become entitled to retake possession of the goods." *Id.* at 641, 945 P.2d at 867. Stated another way, the court clarified its holding:

We think it unlikely [] that the Idaho legislature, in adopting I.C. §§ 18-2402(6) and 18-2403(3), intended to render criminal the conduct of every person who misses a payment on a secured credit purchase and does not immediately comply with a contractual obligation to relinquish possession of the collateral to the secured seller.

*Id.* The court was careful with its decision, reiterating that it should not be read as a mechanism to avoid prosecution for theft. *Id.* at 642, 945 P.2d at 868. "*Lest our opinion be misunderstood*, a further observation is warranted regarding Idaho's theft statutes and Henninger's alleged conduct." *Id.* (Italics added.) The court then described Idaho Code section 18-2403(2)(a), which defines another type of theft as obtaining goods from sellers by fraud. *Id.* That statute, the court concluded, could have been utilized to prosecute Henninger's conduct instead of theft by unauthorized control. *Id.* Finally, the court stated its conclusion again, considering the legislative intent behind the theft statute and principles of contract law:

Without a more explicit expression of intent by the legislature to abandon this customary separation of criminal law from civil contract enforcement, we will not conclude that the legislature intended unauthorized control under I.C. § 18-2403(3) to encompass possession by a debtor who, by defaulting on a payment, has become contractually obligated to return the collateral to the creditor, or that the legislature intended the theft statute to be a mechanism that would aid the repossession efforts of secured creditors.

*Id.*

Simply put, the *Henninger* decision does not bar Schiermeier's prosecution for grand theft. First, the Court of Appeals went to great lengths to explain its narrow holding, restating it three separate times. This is because the holding was specific to the type of transaction that Henninger engaged in with the seller of the truck. The Court of Appeals simply declined to allow a secured creditor to enforce its right to repossession via a criminal prosecution for theft.

*Henninger* is readily distinguishable from Schiermeier's case. First, Schiermeier was not engaged in a transaction with DARE. There was no exchange of goods between Schiermeier and the corporate entity; rather, Schiermeier acted as an agent of DARE who was authorized to expend funds on behalf of the non-profit corporation. Furthermore, the court in *Henninger* clarified that Henninger's conduct could have been prosecuted on a different theory of theft, not merely that Henninger's conduct was not criminal. Finally, while there is a traditional separation between contract and criminal law, *Henninger* does not stand for the proposition that one's conduct can only be *either* a breach of a contract *or* a violation of a criminal statute. On the contrary, as expressly acknowledged by the *Henninger* court, the truck dealership had the right to repossess the truck according to its contract, *and* Henninger's conduct could have been prosecuted as theft by fraud. It is well-established that the status of one's conduct can be pursued both civilly and criminally concurrently. *See, e.g.*, *Camp v. East Fork Ditch Co.*, 137 Idaho 850, 55 P.3d 304 (2002). For these reasons, *Henninger* did not bar Schiermeier's prosecution for theft.

It then follows that the Deputy SAPD's decision to reject the *Henninger* issue on appeal was not ineffective. As discussed above, this Court does not second-guess strategic or tactical decisions of appellate counsel regarding which issues should have been raised on appeal. *See Dunlap*, 159 Idaho at 296, 360 P.3d at 305. "To demonstrate deficient performance of appellate counsel for failure to raise a claim on appeal, the defendant must show that counsel made an *objectively unreasonable* decision to omit the claim." *Id.* (Italics added.) It was not objectively unreasonable for the Deputy SAPD to fail to raise the *Henninger* case as a basis for vacating Schiermeier's conviction because it was readily distinguishable from the facts in Schiermeier's case. Because the Deputy SAPD's performance was not deficient, this Court need not reach the question of whether Schiermeier suffered prejudice. Therefore, we hold the district court did not err in concluding that the Deputy SAPD was not ineffective for failing to raise *Henninger* on direct appeal.

11

3. DARE was the "owner" of the funds wrongfully spent by Schiermeier, and the Deputy SAPD's failure to argue otherwise on appeal was not ineffective.

In his petition, Schiermeier presented the argument that DARE was not an "owner" of the donated funds and did not retain "superior possessory rights" in the funds expended by Schiermeier; therefore, Schiermeier could not have committed theft. When she was deposed, the Deputy SAPD explained why she declined to raise this "owner" theory as follows: "If I didn't raise the ownership issue, it's because it was either not viable or strategically and tactically that issue was not the best issue to be raised or one of the best issues to be raised in this case."

The district court was not persuaded by Schiermeier's "owner" theory either. In its decision dismissing Schiermeier's petition, the district court first noted that

> Petitioner concedes that once funds were donated to DARE/PAL, they became the property of DARE/PAL. Along with the identified remarks of [Schiermeier] in [*Schiermeier I*], it is clear that Petitioner recognized the funds were not his own and the funds properly belonged to DARE/PAL. Any possessory rights held by Petitioner over the funds of DARE/PAL were clearly inferior to the possessory rights of DARE/PAL.

On appeal, Schiermeier relies chiefly on *State v. Bennett*, 150 Idaho 278, 246 P.3d 387 (2010) and *State v. Dix*, 166 Idaho 851, 465 P.3d 1090 (2020) to support his owner theory:

> [T]he State cannot ignore the Certificate of Authority (State's Exhibit 31)[4], [sic] a contract was executed at U.S. Bank by the bank, the corporation[,] and Schiermeier, giving Schiermeier the unconditional right to expend the corporation's funds at any time in any manner deemed appropriate, *without the corporation reserving any possessory rights to said funds in any way*.

(Italics added.)

An examination of the two cases relied on by Schiermeier readily demonstrates the flaws in his argument. In *Bennett*, the defendant purchased a trailer from LeFave. 150 Idaho at 278, 246 P.3d at 387. The parties agreed that after he made a down payment, the remaining payments could be made by Bennett over time, with title being transferred to Bennett upon the final payment. *Id.* Bennett made at least one payment, but eventually left the state with the trailer before completing the payments. *Id.* at 279, 246 P.3d at 388. LeFave reported the trailer as stolen to law enforcement, and Bennett was eventually charged with and convicted of theft in violation of Idaho Code sections 18-2403(1) and 18-2407(1)(b). *Id.*

---

[4] This document was not contained in the record.

12

On appeal, this Court overturned Bennett's conviction because it concluded that the State had failed to prove that, at the time Bennett wrongfully took the trailer, LeFave was the owner of the trailer. *Id.* at 279–80, 246 P.3d at 388–89. The Court concluded that "the State had the burden of proving that LeFave had possessory rights in the trailer which were superior to any possessory rights that Bennett had at the time of the alleged wrongful taking." *Id.* at 281, 246 P.3d at 390. In reaching its conclusion, the Court noted that the Uniform Commercial Code (UCC) governed the transaction between Bennett and LeFave. *Id.* In that context, this Court held that LeFave did not retain "superior possessory rights" in the trailer, therefore, he was no longer the owner for purposes of the theft statute. *Id.* Instead, "LeFave's available remedy [was] to sue Bennett for the unpaid price" under the UCC. *Id.*

In *Dix*, the defendant purchased several power tools from Grainger Supply on credit. 166 Idaho at 852, 465 P.3d at 1091. On the same day of the purchases, Dix pawned the items. *Id.* Dix was charged with and convicted of both grand theft and burglary. *Id.* at 852–53, 465 P.3d at 1091–92. On appeal, this Court, relying on *Bennett*, vacated Dix's convictions because the "State did not prove that Grainger had a superior possessory interest to the goods at the time of Dix's alleged theft." *Id.* at 854, 465 P.3d at 1093. The *Dix* Court then defined "owner" in the context of the theft statute: "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." *Id.* (quoting I.C. § 18-2402(6)). This Court then concluded that, at the time of Dix's alleged theft, Dix had superior possessory rights because ownership of the goods transferred to him when he purchased and took possession of them from Grainger. *Id.*

Schiermeier's ownership theory is inapposite, and neither *Bennett* nor *Dix* apply to these facts. First, both cases involved a transaction for the sale of goods, governed by the UCC. Here, there was no such transaction between Schiermeier and DARE. Schiermeier purchased goods with the DARE debit card, but DARE was not a secured creditor of the goods purchased. Second, one element of a grand theft charge is that another person or entity is the "owner" of the property taken. It cannot seriously be disputed that DARE owned the funds contained in its bank account. There is no support for the argument that officers, directors, or managers of a corporation have possessory rights to the corporation's money that are superior to the corporate entity's rights itself. Schiermeier's assertion to the contrary belies common sense. Schiermeier has failed to demonstrate how he had any possessory rights in DARE's bank account that were superior to those of DARE. In fact, Schiermeier's petition for post-conviction relief demonstrates that he knew that

13

the donated funds were the property of the corporation: "By the end of the trial, it became perfectly clear that, as a matter of law. . . when the sheriff's department donated funds to the corporation *the funds became the property of the corporation*, which was a standalone entity[.]" (Italics added.)

For these reasons, the Deputy SAPD's decision not to raise Schiermeier's "ownership" theory on appeal was both a strategic decision and not supported by the case law upon which Schiermeier now relies. It was not "obviously unreasonable" for the Deputy SAPD to fail to raise this argument on appeal. *See Dunlap*, 159 Idaho at 296, 360 P.3d at 305. "Courts have recognized that appellate counsel may fail to raise an issue on appeal because counsel 'foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.'" *Id.* (quoting *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989)). The Deputy SAPD was not deficient for failing to raise the ownership theory on direct appeal because it had no likelihood of success. Because the Deputy SAPD was not deficient, this Court need not reach *Strickland's* second prong of prejudice. As a result, the district court did not err in concluding the Deputy SAPD was not ineffective for failing to raise the ownership theory on direct appeal.

## B. The district court retained subject matter jurisdiction for the duration of Schiermeier's trial for grand theft.

Finally, Schiermeier claims that the district court did not have subject matter jurisdiction over the case:

> The bottom line is that even though jurisdiction was originally conferred upon the district court by the filing of the information charging grand theft, by the time of the conviction/sentencing, the [district] court lost subject matter jurisdiction because the evidence in the case, and the State's prohibited legal theories of theft established conclusively that Schiermeier's actions did not constitute theft in Idaho as a matter of law, not merely from insufficiency of the evidence.

Schiermeier continues: "If Schiermeier's legal analysis in this current appeal is correct with respect to any one of the three issues in the Argument section herein, he could not have committed theft as a matter of law, meaning that such error was jurisdictional."

"Subject matter jurisdiction in a criminal case is conferred by the filing of an 'information, indictment, or complaint alleging an offense was committed within the State of Idaho.'" *State v. Quintero*, 141 Idaho 619, 621, 115 P.3d 710, 712 (2005) (quoting *State v. Jones*, 140 Idaho 755, 757–58, 101 P.3d 699, 701–02 (2004)). Schiermeier offers no support for his contention that a district court can lose subject matter jurisdiction simply where the State fails to prove an element

14

of a charged crime. Schiermeier also does not dispute that a proper indictment was filed in district court. If defense counsel believes the State's evidence is insufficient to establish a required element of the crime, Idaho Criminal Rule 29 provides a mechanism for the trial court to address this concern. Under Rule 29, a defendant may challenge (or the court may review the evidence *sua sponte*) to determine "whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hoyle*, 140 Idaho 679, 6884, 99 P.3d 1069, 1074 (2004). If a court agrees that an element of the crime has not been proven beyond a reasonable doubt, then it may acquit the defendant. I.C.R. 29.

As a result, we conclude that Schiermeier's argument that the district court somehow lost subject matter jurisdiction during the course of the trial is patently frivolous and wholly without merit or support.

### C. Both local counsel and *pro hac vice* counsel are required to abide by the Idaho Rules of Professional Conduct.

We turn now to a necessary discussion regarding the conduct of counsel before this Court during the prosecution of this appeal. We take seriously the Professional Rules of Conduct required by our profession and expect all who appear before us to do so as well. The Idaho Bar Commission Rules govern admission and practice required of those practicing law in this state, while the Idaho Rules of Professional Conduct outline the lawyer's responsibilities. Relevant here are Idaho Bar Commission Rule 227 and Idaho Rule of Professional Conduct 8.2(a), which explain the requirements for *pro hac vice* admission and discussion of judicial qualifications, respectively.

Generally speaking, only actively licensed Idaho attorneys may practice law in this state. Licensed attorneys from out-of-state, however, may apply for *pro hac vice* admission pursuant to Bar Commission Rule 227. Under this system, out-of-state attorneys are required to associate with local Idaho counsel who are members in good standing in Idaho. Those whose admission has been granted by the affected court may practice law on a case-by-case basis in Idaho. We require association with local counsel to ensure that out-of-state attorneys are familiar with the standards and expectations governing an Idaho counsel's behavior and that local counsel will then take responsibility for the conduct of out-of-state counsel who operate within our court system. For these reasons, the Bar Commission requires local counsel to be an *active* member of the Idaho State Bar. To that end, the Bar Commission Rules require local counsel to appear at all proceedings with the out-of-state counsel, unless the obligation to appear has been waived. We have been relaxed about enforcing the requirement that local counsel appear with out-of-state counsel given

15

the additional cost to clients and the historic adherence to our local rules by most out-of-state attorneys. However, the presence of local counsel is still preserved in the Bar Commission Rules and may only be waived by the individual court. Importantly, once the out-of-state attorney has applied for and been granted admission *pro hac vice*, that attorney "consents to the exercise of disciplinary jurisdiction by the affected court and the Idaho State Bar over any alleged misconduct which occurs during the case in which that attorney participates." I.B.C.R. 227(d).

In turn, Idaho Rule of Professional Conduct 8.4 defines misconduct as a "violat[ion] or attempt to violate the Rules of Professional Conduct [;] . . . [an] engage[ment] in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . [an] engage[ment] in conduct that is prejudicial to the administration of justice[.]" Relevant here is Rule 8.2(a), which mandates: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

During Schiermeier's briefing and oral argument to this Court, Mr. Green, *pro hac vice* counsel for Schiermeier, made repeated *ad hominem* attacks on the district court judge who presided over Schiermeier's case, suggesting that Schiermeier had not and would not receive a fair hearing in the district court and that the district court judge was not intelligent enough to understand the arguments made at trial. He also made disparaging comments toward the State's attorneys and the Deputy SAPD regarding their handling of his case. To suggest that a judge would be partial or that counsel would intentionally misrepresent the facts of the case or fail to represent a client to the best of his or her ability, without any basis for such allegations, is, at best, reckless and potentially defamatory. It is certainly not the type of behavior expected of attorneys admitted to practice law in Idaho.

As we have previously held, attorneys do not lose all First Amendment protections once admitted to the Idaho State Bar. *See, e.g.*, *Idaho State Bar v. Topp*, 129 Idaho 414, 416, 925 P.2d 1113, 1115 (1996). However, such an attorney "must temper his criticisms in accordance with professional standards of conduct." *U.S. Dist. Ct. v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993). Our professional standards of conduct are designed "[t]o maintain the fair and independent administration of justice," and therefore, we do not condone behavior that undermines this effort. I.R.P.C. 8.2(a) cmt. 3. Likewise, if an Idaho attorney agrees to act as local counsel for an out-of-state attorney, any submission by that out-of-state counsel must be reviewed by local counsel to

16

ensure that that submission comports with Idaho's Rules of Professional Conduct. To do less would be a dereliction of local counsel's responsibility. Signing a document, even as local counsel, "constitutes a certificate that the attorney . . . has read the . . . brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." I.A.R. 11.2(a).

In this decision today, we reiterate that *pro hac vice* counsel's *ad hominem* comments before this Court were uncalled for and inappropriate. We therefore take the unusual step of publicly issuing a written warning to Messrs. Green and Ritzau that this type of conduct cannot go without comment. We have been generally relaxed about enforcing the appearance requirement for local attorneys when an out-of-state attorney has been admitted *pro hac vice*. However, the purpose of requiring local counsel to be present is to ensure that all attorneys appearing before Idaho courts adhere to the Idaho State Bar's ethical rules pertaining to professional conduct. Going forward, we expect and require both local and *pro hac vice* counsel to be familiar and compliant with our rules and expectations.

## IV.    CONCLUSION

In summary, we hold that Schiermeier's Deputy SAPD was not ineffective for failing to raise the theories on direct appeal now advanced by Schiermeier and that the district court retained subject matter jurisdiction throughout the course of these proceedings. Accordingly, we affirm the district court's summary disposition of Schiermeier's petition for post-conviction relief.

Chief Justice BEVAN, Justices MOELLER, ZAHN, and WILDMAN, J. Pro Tem, CONCUR.

17